UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**05 CV 7775**

------------------------------------------------X

YOLANDA BEE.

*JUDGE PRESKA*

Plaintiff,

**NOTICE OF REMOVAL**

-against-

Case No. 05 Civ. _____

NEW YORK CITY DEPARTMENT OF CORRECTIONS,
WAYNE LAMONT,

Defendants.

------------------------------------------------X

*RECEIVED SEP 02 2005 U.S.D.C. S.D.N.Y. CASHIERS*

**TO:   THE UNITED STATES DISTRICT COURT,
         SOUTHERN DISTRICT OF NEW YORK**

Defendant, New York City Department of Correction, by and through its attorney,

Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully shows this

Court as follows:

1.      On or about August 15, 2005, the New York City Law Department, Office

of the Corporation Counsel, received by mail a Summons and Verified Complaint in the above-

entitled action, pending in the Supreme Court of the State of New York, County of Bronx, Index

No. 18922/05, naming the New York City Department of Correction ("DOC") and Wayne

Lamont as defendants therein, and setting forth the claims for relief upon which the action is

based.  A copy of plaintiff's Summons and Verified Complaint, is annexed hereto as Exhibit

"A."

2.      The above-captioned action is a civil action of which the District Court

has original jurisdiction pursuant to 28 U.S.C. § 1331, in that it alleges a claim which arises

under the laws of the United States, and a violation of plaintiff's federal civil rights by

defendants.  This action is therefore removable to the District Court without regard to the

citizenship or residence of the parties, pursuant to 28 U.S.C. §§ 1441(b) and 1443.

3.      Plaintiff brings this lawsuit claiming, <u>inter alia</u>, that defendants' acts constituted unlawful discrimination in violation of 42 U.S.C. § 1983 and the 14th Amendment of the United States Constitution. <u>See</u> Exhibit "A" ¶¶ 85, 96.

4.      This Notice of Removal is timely because it is being filed within thirty days (30) days of service of the initial pleading. <u>See</u> 28 U.S.C. § 1446(b). Defendant DOC was served by mail on or after August 10, 2005, and defendant Lamont was served by mail on or after August 6, 2005.

5.      Defendant DOC is unaware of any previous application for the relief requested herein.

6.      Mr. Lamont consents to removal of this action.

7.      Defendant DOC will promptly file a copy of this Notice of Removal with the Clerk of the state court in which the action has been pending.

**WHEREFORE**, Defendant New York City Department of Correction respectfully requests that the above-captioned action be removed from the Supreme Court of the State of New York, County of Bronx, to the United States District Court for the Southern District of New York.

Dated:     New York, New York
           September 2, 2005

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the
                      City of New York
                    Attorney for Defendant DOC
                    100 Church Street, Room 2-144
                    New York, New York  10007
                    (212) 788-0895

              By:    _____
                    Rippi Gill (RG 5338)
                    Assistant Corporation Counsel

TO:    Donnahue George & Associates
        Attorney for Plaintiff
        1295 Herkimer Street
        Brooklyn, NY 11233

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------X

YOLANDA BEE,

                Plaintiff,

   -against-

NEW YORK CITY DEPARTMENT OF
CORRECTIONS, WAYNE LAMONT.

                Defendants.

-------------------------------------------------------------X

Index No. *18922*/2005

Plaintiff designates Bronx
County as the place of trial

**SUMMONS**

**Plaintiff resides at 1425
Pennsylvania Ave. apt.17f
Brooklyn, New York 11233**

*To the above-named Defendants:*

      **YOU ARE HEREBY SUMMONED:** to answer the complaint in this
action and to serve a copy of your answer, or if the Complaint is not served with this
summons, to serve a Notice of Appearance, on the Plaintiff's Attorney(s) within 20 days
after the service of this summons, exclusive of the day of service (or within 30 days after
the service is complete if this summons is not personally delivered to you within the State
of New York); and in case of your failure to appear or answer, judgment will be taken
against you by default for the relief demanded herein.

Dated: Brooklyn, New York
     May 31, 2005

                      Donnahue George & Associates
                      Attorney for Plaintiff
                      1295 Herkimer Street
                      Brooklyn, New York 11233.

To Defendants:

New York City Corporation Counsel
100 Church Street
New York, NY 10007

Wayne Lamont

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

-----------------------------------------------------------------X

YOLANDA BEE,

                Plaintiff,

       -against-

NEW YORK CITY DEPARTMENT OF
CORRECTIONS, WAYNE LAMONT,

              Defendants.

-----------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index No. _____

      Plaintiff, Yolanda Bee, by her attorney, Donnahue George, as and for her verified complaint, respectfully alleges, upon information and belief that:

1. A notice of claim was served upon New York City Corporation counsel on August 4, 2004, within 90 days of the statutory date of accrual.

2. At least 30 days have elapsed since the service of the notice of claim and adjustment or payment has been neglected or refused; and

3. The action accrued on June 4, 2004 and was commenced within 1 year and 90 days of the date of accrual.

## JURISDICTION AND PARTIES

1.     At all times the events that gave rise to this cause of action took place in East Elmhurst, New York, which falls under the jurisdiction of Bronx County.

2.     That all times herein, Yolanda Bee is and has been a resident of the City and State of New York, County of Kings.

3.      That at all times herein, Yolanda Bee is a correction officer employed by the New

York City Department of Corrections.

3.      That at all times hereinafter mentioned, the Defendant New York City

Department of Corrections [hereinafter "DEPARTMENT"] is a New York City agency

responsible for the care, custody and control of inmates incarcerated throughout the

county jails in New York City.

4.      That at all times hereinafter mentioned, the Defendant Wayne Lamont

[hereinafter "LAMONT"] was the Warden of Otis Bantum Correction Center [hereinafter

OBCC], a jail located at Rikers Island.

## FACTS

5.      On January 4, 1996 the Plaintiff began working as a Correction Officer for the

New York City Department of Corrections.

6.      Upon completion of training academy, the Plaintiff was assigned a permanent

post at the Central Punitive Segregation Unit at OBCC on Rikers Island.

7.      After displaying exceptional skill and exemplary work performance, several years

later, the Plaintiff was assigned as the Security Risk Group (SRG) / Intelligence Officer

at OBCC.

8.      Over the course of the next four years, the Plaintiff worked closely with numerous

Wardens without incident.

9.      On or about January 5, 2004, Wayne Lamont was appointed Warden at OBCC

despite a history of Equal Opportunity complaints filed against him by a significant

number of female Corrections Officers.

11.     On February 5, 2004, Warden Lamont was among those in attendance at a local restaurant in which a retirement party was being held for the Plaintiffs security captain.

12.     Also, in attendance at the retirement dinner was the Plaintiff and numerous high ranking superior officers to the Plaintiff.

13.     As Defendant Lamont exited for the evening, he stealthily approached the Plaintiff, grazed her ear with his lips and whispered, "make sure you go straight home."

14.     Prior to Defendant Lamont's approach, the Plaintiff had always maintained a business relationship with the Defendant.

15.     Defendant Lamont had not made any such farewell to any other Correction Officer in attendance.

16.     Consequently, the Plaintiff was embarrassed by Defendant Lamont's behavior and was concerned how his conduct would be viewed by her superiors in attendance.

17.     On February 9, 2004 Defendant Lamont summoned the Plaintiff to his office at OBCC.

18.     Although the Plaintiff thought she was being summoned to discuss issues related the Department of Corrections, the Defendant Lamont instead asked her a salvo of personal questions such as:

-     "What did you do after you the left the restaurant,"

-     "Who was that lady you were sitting next to at the restaurant,"

-     "Where are you from,"

-     "Where is your family from,"

-     "Do you have any kids,"

-     "Where do you hang out at."

-      "Are you single."

-      "Are you going to the upcoming party hosted by Captain Person and Officer Ashley.

19.    Despite feeling apprehensive the Plaintiff felt compelled to answer Defendant Lamont's questions.

20.    On or about February 26, 2004, Defendant Lamont ordered the Plaintiff and Captain McCovey to photograph the exterior front gates of several jails on Rikers Island.

21.    While in her office to retrieve her camera, the Plaintiff muttered a profanity to herself that unknowingly, was overheard by Defendant Lamont who happened to be standing outside.

22.    In the presence of uniformed staff (Captain McCovey and Officer R. Patterson), Defendant Lamont entered the Plaintiff's office and closed the door.

23.    Upon the Defendant's entrance into her office, the Plaintiff immediately realized that he heard her usage of profanity and began to apologize profusely.

23.    In the seclusion of the Plaintiff's office, Defendant Lamont grabbed the Plaintiff's hands, held them for approximately one minute and stated "what a mouth for a little girl like yourself."

24.    The Plaintiff then asked whether her apology was accepted to which the Defendant responded "I'll let you know when it is accepted."

25.    Soon after, Defendant Lamont left the office.

26.    On or about March 16, 2004, Defendant Lamont summoned the Plaintiff to his office and questioned what she did during her weekend.

27.     When the Plaintiff tersely responded "why?," Defendant Lamont informed the Plaintiff that he needed her to accompany him on an inspection of the entire jail during her "pass day" (a day in which she was not scheduled to work) and directed the Plaintiff to give his secretary her home telephone number.

28.     The Plaintiff knew Defendant Lamont's request to be in deviation from his reluctance to grant overtime and standard departmental practices of contacting Correction Officers at their home only in the event of an emergency.

29.     The Plaintiff informed Defendant Lamont that he could easily obtain her home telephone number at the "main control" (the hub in the jail that keeps the personnel files of all uniformed staff in the facility).

30.     Only after repeated requests by Defendant Lamont, Assistant Warden Deputy James and the Warden Secretary's Officer McDaniel, did the Plaintiff finally comply with her uncharacteristic directive to give her home phone telephone number to Defendant Lamont.

31.     Over the course of the next several weeks Defendant Lamont repeatedly summoned the Plaintiff to his office for several hours at a time to discuss personal issues; attended meetings unrelated to her job and idly sit alone with him in his office as he carried out his daily functions.

32.     On or about March 17, 2004 the Plaintiff reflected with Deputy Warden Cznerski about an incident when the Plaintiff's daughter complained via speakerphone that the Plaintiff was always working and that "they were not her family."

33.     Defendant Lamont then ordered the Plaintiff to contact her nine year old daughter and proceeded to engage in a conversation with the Plaintiff's daughter for ten minutes.

34. On or about March 22, 2004, the Plaintiff was summoned to Defendant Lamont's office when upon entry she immediately noticed that the fluorescent lights in his office were now dimly lit red and romantic music played in the background.

35. When the Plaintiff questioned the sudden change in ambiance, Defendant Lamont responded; "It's my office and I can do what I want."

36. Defendant Lamont then told the Plaintiff to sit down on the couch.

37. When the Plaintiff refused, Defendant Lamont explicitly ordered the Plaintiff to sit down on the loveseat near his desk.

38. Fearing a charge of insubordination, the Plaintiff complied with Defendant Lamont's order and sat down in the loveseat.

39. Minutes later, Correction Officer Patterson unexpectedly opened the door to the Defendant's office and upon gazing the room stated "Is this a red light special."

40. However, after observing the Plaintiff more closely, Officer Patterson angrily told Defendant "I'm not going to be going downtown lying for you," and hurriedly exited the office.

41. Days later the Plaintiff expressed to Captain Idellet and Officer Patterson her fears about constantly being summoned by Defendant to be alone with him in his office.

42. The Plaintiff echoed her fears concerning Defendant Lamont to Deputy Warden Czerski( an immediate supervisor) and on several occasions, asked Deputy Warden Czerski to accompany her when summoned by Defendant Lamont to this office.

43. On or about March 24, 2004 Defendant Lamont and Officer Patterson were present with the Plaintiff in her office.

44.     When the Plaintiff's tour ended, she asked both Defendant Lamont and Officer Patterson to exit her office so that she may change her clothes.

45.     Defendant Lamont ordered Officer Patterson to exit the office but remained alone with the Plaintiff in her office.

46.     After closing the office door, Defendant Lamont sat in the Plaintiffs chair and commanded; "take off your clothes," to the Plaintiff.

47.     Fearful, shocked and nervous, the Plaintiff replied "what?"

48.     Defendant Lamont then wryly replied, "so....get dressed."

49.     The Plaintiff then stated to Warden Lamont "you're playing yourself" (knowingly exceeding his role as her superior) and deferentially asked Defendant Lamont to leave her office.

50.     After several minutes, Defendant Lamont finally left the Plaintiff's office and allowed her to get dressed.

51.     Shamed and embarrassed, the Plaintiff confided in Officer Patterson and Officer Danzy about this incident.

52.     On or about March 21, 2005 an unknown officer from RSMC overheard the Plaintiff's conversation and interjected "oh you don't know Warden Lamont wants everyone to know that you are his jail Boo" (girlfriend).

53.     On or about April 28, 2004 the Plaintiff was publicly admonished by Defendant Lamont in the presence of both Deputy Warden's of OBCC for not promptly responding to his office when summoned.

54.    When the Plaintiff told Defendant Lamont that long periods of inactivity while in his presence precludes her from performing her job duties, Defendant Lamont informed the Plaintiff that she is to wait for him in his office even if it takes all day.

55.    Once Defendant Lamont left, Deputy Warden Isaac placed his arm on the Plaintiff's shoulder and said "Don't worry I've got your back."

56.    The Plaintiff then returned to her office and immediately called her personnel Captain, Captain McCovey, and requested that he immediately change her post to another area of the jail in which she would not have to encounter Defendant Lamont.

57.    After her conversation with Captain McCovey the Plaintiff shut her office door and cried uncontrollably for the next ten minutes.

58.    Hearing the Plaintiff's sobs, Officer Flowers and Officer Ashley entered the Plaintiff's office and immediately consoled the Plaintiff.

59.    The next day the Plaintiff reported Defendant Lamont's ongoing harassment to Deputy Warden Isaac.

60.    In the presence of both Deputy Warden Isaac and Officer Flowers, the Plaintiff cried as she relayed in detail the months of harassment she was compelled to endure from Defendant Lamont.

61.    The Plaintiff told Deputy Warden Isaac that due to Defendant Lamont's harassment, she was fearful, ill and could no longer perform her job duties.

62.    Deputy Warden Isaac responded by calling the Plaintiff a "sensitive" and "emotional" person.

63.    Deputy Warden Isaac replied further by stating "If anything comes back to me, I'm going to deny that you told me anything....I don't want anything to do with it."

64.     Deputy Warden Isaac then told the Plaintiff that she would be reassigned to an obscure post in a desolate area of the jail.

65.     Soon after the Plaintiff's meeting with Deputy Warden Isaac, the Plaintiff yet again complained to Deputy Warden Czerniawski concerning the harassment of Defendant Lamont.

66.     Unable to continually ignore the Plaintiff's claim of harassment, on May 14, 2004 Deputy Warden Czerniawski, filed a pithy Equal Employment Opportunity complaint on the Plaintiff's behalf.

67.     As is protocol, the Plaintiff was required to be interviewed for the EEOC hearing at the Department of Corrections headquarters in lower Manhattan.

68.     Defendant Lamont and Deputy Warden Isaac (a Deputy Warden in his facility) were instead interviewed in Defendant Lamont's office by EEOC investigators.

69.     Consequently, the Plaintiff's EEOC complaint was deemed unsubstantiated.

70.     Soon after Defendant Lamont's assignment to Warden of OBCC he was promoted to Assistant Chief of the Special Operations Division intelligence Unit.

71.     On May 28, 2004 the Plaintiff applied for a promotion as an investigator within the Special Operations Division of the Gang Intelligence unit.

72.     As one of three finalists for the position, the Plaintiff had the most experience and best disciplinary record.

73.     The Plaintiff's first interview was with Captain Weadock of the intelligence unit.

74.     Captain Weadock recommended the Plaintiff for the position and scheduled a second interview with Chief Pagan who was in charge of intelligence unit.

75.   After the Plaintiff's second interview, Deputy Hawthorne told the Plaintiff that she would be given the position as an investigator within the Special Operations Division of the Gang Intelligence unit.

76.   The Plaintiff was told that she would begin her new position in several weeks.

77.   The Plaintiff's immediate supervisors were informed of her promotion and as a result, the Plaintiff was ordered to by Defendant Lamont to train Officer Coakley to perform her current job duties.

78.   Prior to the Plaintiff's start date for her new position, Defendant Lamont was promoted to Assistant Chief of the Special Operations Division for the Gang intelligence unit.

79.   Defendant Lamont was now in charge of the entire division that oversaw the unit to which the Plaintiff applied to become an investigator.

80.   After training officer Coakley for a week to perform her job duties the Plaintiff was told that she would no longer be given the position.

81.   Defendant Lamont refused to sign off on the Plaintiff's transfer nor grant the Plaintiff any explanation for her sudden rejection.

82.   It was later ascertained that the position of investigator for the Special Operations Division of the Gang Intelligence unit was given to Officer Farley.

83.   Officer Farley was far less experienced, had a worse disciplinary record and had less seniority than the Plaintiff.

84.   Consequently, the Plaintiff returned to her previous post to which she still maintains.

## FIRST CAUSE OF ACTION

85.     Defendant Lamont created a hostile work environment by sexually harassing the Plaintiff for a period of six successive months in violation of Title 42 U.S.C § 1983 of the 1964 Civil Rights Act.

86.     Defendant Lamont intentionally, willfully, and without justification, acted to deprive Plaintiff, on the ground of her sex, of her rights, privileges and immunities, particularly of her rights to be free of sexual harassment in the workplace and not to be compelled to endure a hostile work environment.

87.     Defendant Lamont's stealth approach of the Plaintiff at a retirement party where he grazed the Plaintiff's ear with his lips and whispered, "make sure you go straight home" was unwanted and created the impression of a personal relationship with the Defendant.

88.     Defendant Lamont's half an hour interrogation of the Plaintiff regarding her personal affairs including whether or not she was single was unwanted and interfered with the Plaintiff's work performance.

89.     Defendant Lamont secluded himself with the Plaintiff in her office after overhearing her usage of profanity. His subsequent admonishment of grabbing the Plaintiff's hands for approximately one minute and stating "what a mouth for a little girl like yourself" was unwanted and interfered with the Plaintiff's work performance.

90.     Defendant Lamont's pervasive five month behavior where he repeatedly summoned the Plaintiff to his office for several hours at a time to discuss personal issues; attended meetings unrelated to her job and idly sit alone with him in his office as he

carried out his daily functions, was unwanted and interfered with the Plaintiff's work performance.

91.     Defendant Lamont ordered the Plaintiff to telephone her nine year old daughter so that he may speak with her. The ensuing ten minute conversation he had with the Plaintiff's daughter was unwanted and interfered with the Plaintiff's work performance.

92.     After having summoned the Plaintiff, Defendant Lamont altered the white fluorescent lights in his office to a dimly lit red and played romantic music upon the Plaintiff's entry to his office. The creation of a romantic setting by Defendant Lamont for the Plaintiff's behalf was unwanted and interfered with the Plaintiff's work performance.

93.     Defendant Lamont ordered another officer to leave while himself refusing to exit the plaintiff's office to afford her privacy to change her clothes. His seclusion with the Plaintiff where he ordered the Plaintiff to take off her clothes was unwanted and interfered with the Plaintiff's work performance.

94.     As a result of the foregoing, Plaintiff has been denied preferred assignments opportunities, lost wages, benefits, bonuses and continues to suffer irreparable injury, mental anguish, emotional distress, loss of enjoyment of life and has incurred damages thereby.

## SECOND CAUSE OF ACTION

95.     Plaintiff repeats and realleges the preceding paragraphs as if more fully set forth herein.

96.     Defendant New York City Department of Corrections violated Title 42 U.S.C § 1983 of the 1964 Civil Rights Act in that they knew, condoned, acquiesced or should

have known of the sexual harassment of the Plaintiff and failed to take reasonable steps

to stop the harassment and discontinue to foster a hostile environment.

97.    Plaintiff repeatedly informed a litany of Officers, Captains, Deputy Wardens and

Assistant Wardens of Defendant Lamont's persistent and unwanted sexual harassment.

98.    Despite express knowledge, Defendant New York City Department of Corrections

refused to take any steps to stop Defendant Lamont's sexual harassment of the Plaintiff

and thereby condoned, acquiesced and fostered a sexual hostile environment.

99.    The Defendant New York City Department of Corrections, despite knowledge

and adequate opportunity to learn of the misconduct of their agents, subordinates and

employees, adopted, approved and ratified these acts, omissions, and misconduct of

Defendant Lamont

100.    As a result of the foregoing, Plaintiff has been denied preferred assignments

opportunities, lost wages, benefits, and bonuses and continues to suffer irreparable injury,

mental anguish, emotional distress, loss of enjoyment of life and has incurred damages

thereby.

### THIRD CAUSE OF ACTION

101.    Plaintiff repeats and realleges the preceding paragraphs as if more fully set forth

herein.

102.    Defendants have discriminated against Plaintiff in the workplace on the basis of

her sex in violation of the Fourteenth Amendment of the United States Constitution, New

York Executive Law 298 et seq. and New York City Administrative Code §§8-101 et seq.

103.    Defendants discriminated against Plaintiff in the workplace on the basis of sex

and in retaliation for her complaint of sexual harassment by Defendant Lamont and

intentionally, willfully and without justification, acted to deprive her, on the grounds of her sex, her right to be free from discrimination.

104.    In retaliation of the Plaintiff's EEOC complaint, Defendants wrongfully rescinded an offer of promotion to the Plaintiff.

105.    Defendants thereby failed to provide and ensure a workplace for Plaintiff and other female employees free of sexual innuendo, intimidation, discriminatory animus and retaliation and to enforce the rules, regulations and laws necessary to protect her and other female employees from a sexual hostile or abusive work environment and retaliation for exercising protected rights.

106.    As a result of the foregoing, Plaintiff has been denied preferred assignments opportunities, lost wages, benefits, bonuses has and continues to suffer irreparable injury, mental anguish, emotional distress, loss of enjoyment of life and has incurred damages thereby.

## FOURTH CAUSE OF ACTION

107.    Plaintiff repeats and realleges the preceding paragraphs as if more fully set forth herein.

108.    Defendant New York City Department of Corrections was negligent in its retention and supervision of Defendant Lamont.

109.    As a result of the numerous allegations and complaints of sexual harassment filed against Defendant Lamont, Defendant New York City Department of Corrections knew or in the exercise of reasonable care should have known that Defendant Lamont was potentially dangerous in that he was predisposed to sexual harassment of female Corrections officers.

110.    Despite Defendant Lamont's infamous history of sexual harassment allegations of female correction officers throughout his twenty five year career at the New York City Department of Corrections, Defendant New York City Department of Corrections has never taken appropriate action for Defendant Lamont's prior incidents.

111.    Defendant New York City Department of Corrections knowingly retained in its employ Defendant Lamont; a person with known dangerous propensities in a position that would present a foreseeable risk of harm to others.

112.    Defendant New York City Department of Corrections was negligent in its retention of Defendant Lamont by placing him in a position that caused foreseeable harm to the Plaintiff, who probably would have been spared her injuries had Defendant New York City Department of Corrections taken reasonable care in making decisions regarding the retention of Defendant Lamont.

113.    As a result of the foregoing, Plaintiff has been denied promotional opportunities, lost wages, benefits, bonuses, has and continues to suffer irreparable injury, mental anguish, emotional distress, loss of enjoyment of life and has incurred damages thereby.

**WHEREFORE**, Plaintiff prays that this Court grant judgment to her containing the following relief:

1.    Declaring that the acts and practices complained of herein are in violation of 42 U.S.C. 1983§ 1983, the Fourteenth Amendment of the United States Constitution, New York Executive Law 298 et seq. and New York City Administrative Code §§8-101 et seq.

2.    enjoining and permanently restraining these violations of 42 U.S.C. 1983§

1983, the Fourteenth Amendment of the United States Constitution, New York Executive

Law 298 et seq. and New York City Administrative Code §§8-101 et seq.

3.    directing defendants to take such affirmative action as necessary to ensure

that the effects of theses unlawful practices are eliminated and do not continue to affect

Plaintiff's employment opportunities and other females;

4.    an order that Defendant New York city Department of Corrections

promote Plaintiff to the position she was offered with full seniority, status, salary

increments, bonuses and benefits, to the extent that she would have received but for

Defendants unlawful conduct;

5.    directing Defendants to pay Plaintiff compensatory damages in an amount

not less that TEN MILLIION DOLLARS (10,000,000) for the humiliation, mental

anguish, and emotional distress sustained by her;

6.    directing Defendants to pay Plaintiff punitive damages in an amount not

less that TEN MILLIION DOLLARS (10,000,000) for the humiliation, mental anguish,

and emotional distress sustained by her;

7.    an award to Plaintiff of the costs of this action, together with her

reasonable attorney's fees to the fullest extent permitted by law;

8.    such other further relief as this Court may deem just and proper.

DONNAHUE GEORGE
Attorney for Plaintiff
1295 Herkimer Street
Brooklyn, NY 11233
(718) 922-1613
(718)922-1622

## CERTIFICATE OF SERVICE

I, Rippi Gill, hereby certify that a copy of the attached Notice of Removal was caused to be served on the party listed below by mail on September 2, 2005 .

> Donnahue George & Associates
> Attorney for Plaintiff
> 1295 Herkimer Street
> Brooklyn, NY 11233

Dated:          New York, New York
                September 2, 2005

                                              _____
                                              Rippi Gill

Case No. 05 Civ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YOLANDA BEE,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
CORRECTIONS, WAYNE LAMONT,

Defendants.

## NOTICE OF REMOVAL

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant DOC*
*100 Church Street, Room 2-144*
*New York, N.Y. 10007*

*Of Counsel: Rippi Gill*
*Tel: (212) 788-0895*
*NYCLIS No. 05LE000263*

*Due and timely service is hereby admitted.*

*New York, N.Y. ....................................., 200*

*.........................................................  Esq.*

*Attorney for ..................................................*